The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 11 |
| | ) (Jointly Administered) |
| SII LIQUIDATION COMPANY, | ) |
| | ) CASE NOS. 10-60702 |
| Debtor. | ) |
| | ) ADV. NO. 10-6097 |
| KEYBANK NATIONAL ASSOCIATION, | ) |
| | ) HONORABLE RUSS KENDIG |
| Plaintiff, | ) |
| | ) **MEMORANDUM OF OPINION** |
| v. | ) **(NOT INTENDED FOR** |
| | ) **PUBLICATION)** |
| HUNTINGTON NATIONAL BANK, | ) |
| Defendant. | ) |
| | ) |

    Two motions are before the court: a motion to transfer venue to the United States District Court for the Middle District of Florida and a motion to intervene filed by the creditor trustee John B. Pidcock ("Creditor Trustee"). The court heard the motions on September 6, 2011. Briefing of the issues has concluded and the motions are ready for decision by the court.

    The court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The following constitutes the court's findings of fact and conclusions of law.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## BACKGROUND AND FACTS

Plaintiff filed this adversary in an attempt to recover nearly $3,000,000 in life insurance policy premiums paid by one of the jointly administered debtors, Schwab Industries, Inc. ("Schwab Industries"),[1] on the lives of Jerry A. Schwab[2] and Donna L. Schwab. Jerry and Donna Schwab, husband and wife and resident of Florida, were directors and shareholders of Schwab Industries, Inc. Schwab Industries' corporate headquarters were located in Dover, Ohio.

The life insurance policies are part of the Schwab Irrevocable Trust #1 ("Trust") settled by Jerry Schwab in April 1992. Huntington National Bank is the trustee ("Trustee" or "Defendant") as the successor to Huntington Trust Company. Huntington National Bank is a national banking institution. The Trust is governed by Florida law.

At the time the Trust was settled, Trustee entered into a split dollar agreement ("Agreement") with Schwab Industries. Schwab Industries paid the life insurance policy premiums and, in exchange, obtained a collateral security interest for the value of the premiums paid. Termination provisions in the Agreement allow for the potential recovery of the premiums paid by Schwab Industries from the Trust. The Agreement is governed by Florida law.

Schwab Industries, along with several related entities, filed a chapter 11 petition on February 28, 2010. SII owed approximately $61,000,000, plus interest, to various prepetition secured lenders, including Plaintiff KeyBank National Association ("Plaintiff"). Plaintiff is the administrative agent for the prepetition secured lenders. It is a national bank.

SII's assets were sold in May 2010. The sale did not fully pay the prepetition secured lenders. At the time this adversary was filed, they are still owed approximately $15,000,000. The sale process resulted in the establishment of a fund for the benefit of other creditors ("Creditor Trust"). John B. Pidcock is the trustee of the Creditor Trust ("Creditor Trustee"). Under certain conditions, the Creditor Trust is funded with a share of proceeds recovered by

---

[1] Under the confirmation order, the jointly administered debtors are now known as SII Liquidation Company. The court will use "SII" or "Debtors" to refer to the jointly administered debtors collectively. It will use "Schwab Industries" to refer to the debtor-entity that is a party to the split dollar agreement discussed herein.

[2] Jerry Schwab and J.A. Schwab are used interchangeably.

2

Plaintiff. If Plaintiff recovers the policy premiums in the instant adversary, the Creditor Trust stands to receive fifteen percent (15%).

Under the sale order and the prepetition security interest filings, Plaintiff, as agent for the secured lenders, claims a valid, perfected, first priority security interest in prepetition collateral that was not sold in the sale of SII's assets. It alleges part of the collateral includes rights under the split dollar agreement. It contends that Schwab Industries' bankruptcy filing was grounds for termination of the split dollar agreement. Relying on Ohio Revised Code § 1309.67 and the sale order, it filed this adversary to enforce the Agreement to recover the premiums paid or to seek a transfer of the policies.

Trustee objects to the relief sought. It filed a counterclaim against Plaintiff seeking declaratory judgment to determine the parties' interests, as well as other relief. Additionally, Trustee filed a third-party complaint against the beneficiaries of the Trust, also seeking a declaratory judgment as to the rights and interests in the policies and premiums.

Plaintiff alleged, and Trustee admitted, this action is a core proceeding under 11 U.S.C. § 157(b)(2)(A) and (O).

Several of the beneficiaries filed answers to the third-party complaint. Jerry Schwab, Donna Schwab and David A. Schwab ("Schwabs") filed a joint answer and cross-claimed against Plaintiff. David Schwab, son of Jerry and Donna, is also a resident of Florida and a beneficiary under the Trust. The Schwabs deny the Trust terminated and contend that Schwab Industries could not pledge its interest in the split dollar agreement, Plaintiff is not a secured creditor, and cannot enforce termination rights under the Agreement. The Schwabs also filed a counterclaim against Trustee.

Other beneficiaries, including Mary Ann Schwab Hites, Jason David Hites, Justin Hites and Ronald Manse, also filed answers to the third-party complaint. These third-party defendants are residents of Ohio.

On July 29, 2011, the Schwabs filed a motion to transfer venue of this proceeding to the United States District Court for the Middle District of Florida. The motion is opposed. On August 12, 2011, Creditor Trustee filed a motion to intervene in the adversary proceeding. His motion is also opposed.

## LAW AND ANALYSIS

I.  **Motion to Transfer Venue**

   *A.*  *The Statutory Framework*

The Schwabs assert that both the interest of justice and the convenience of the parties

3

require transfer of this adversary. They rely on 28 U.S.C. §§ 1404, 1412 and Federal Rule of Bankruptcy Procedure 7087.

Bankruptcy rule 7087 directly applies to transfers of adversary proceedings: "[o]n motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412, except as provided in Rule 7019(2)." Fed. R. Bankr. P. 7087. The cited United States Code provision states that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

Although the Schwabs also cite 28 U.S.C. § 1404(a) in their motion, the court finds that § 1412 directly governs. First, the bankruptcy rules discussing transfers of venue specifically cite § 1412, not § 1404. Second, as recognized by other courts and both Plaintiff and the Schwabs, the standards are similar. See Bavelis v. Doukas (In re Bavelis), 453 B.R. 832 (Bankr. S.D. Ohio 2011) (citing Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C., 408 B.R. 90, 98 n. 3 (Bankr. S.D. Tex. 2009)). Third, cases applying § 1404(a) tend to involve non-core proceedings. See Bavelis, 453 B.R. 832, 873 n. 26 (citing Dunlap v. Friedman's Inc., 331 B.R. 674, 677 (S.D. W. Va. 2005)). The primary claim between Plaintiff and Defendant, the subject of the complaint, is core.

Core proceedings include those actions which involve matters either "arising in" or "arising under" a title 11 case. Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.), 930 F.2d 1132 (6th Cir. 1991). As explained by the Sixth Circuit, a core proceeding "arises under" the bankruptcy code when the "cause of action [is] created or determined by a statutory provision of title 11." Id. at 1144 (citation omitted). A § 547 preference action is an example of a core action "arising under" title 11. It is clear that the claims and causes of action in the instant adversary action do not "arise under" a title 11 bankruptcy code provision and therefore do not enjoy core status on this basis.

When a cause of action could only "arise in" a bankruptcy case, it is also a core proceeding. Id. According to the Fifth Circuit, this means that if a proceeding is "not based on any right expressly created by title 11, but nevertheless[] would have not existence outside of the bankruptcy," it is core. Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987). Within that framework, the court fails to see how this proceeding does not qualify as one "arising in" a title 11 case. The Schwabs argue the proceeding is non-core because it only relates to the bankruptcy case. They contend the cause of action could exist outside of the bankruptcy case, and therefore it does not qualify as one "arising in" a title 11 case. This view obscures the core allegations and their relationship to the main bankruptcy case.

Schwab Industries has a collateral security interest in the policy premiums. Any property interest Schwab Industries had in the premiums, or under the split dollar agreement, became property of the bankruptcy estate as of the date of the bankruptcy filing in accordance with 11 U.S.C. § 541. Plaintiff is alleging, by virtue of its pre- and postpetition security

4

interests in SII's assets, a termination provision in the final cash collateral order, and the sale order, it obtained rights in the collateral security interest held by Schwab Industries. Plaintiff contends it has stepped in, or succeeded to, Debtors' rights in the property, not merely by operation of state law, but also by operation of specific bankruptcy orders. If Plaintiff is correct, the door may be open to recovery of $3,000,000, which will reduce its secured claim in the bankruptcy case and provide additional funds for the Creditor Trust. Plaintiff seeks to enforce its alleged rights under the sale order and other documents to authorize it to compel termination of the split dollar agreement in its effort to recoup the premiums from the Trust. The Schwabs admit that the sale order is vital to Plaintiff's position, stating "[t]he Sale Order purported to deem SII's rights under the [split dollar agreement] to be part of KeyBank's collateral." (M. Transfer Venue, ¶ 21) These combined factors convince the court that the primary dispute between Plaintiff and Defendant is core.

This case bears some similarity to the Wolverine Radio case. There, the form of the motion, a motion to enforce the confirmation order, was clearly connected to the bankruptcy case, but, looking at the substance of the matter, the court noted "the proceeding could also be characterized as one in the nature of a declaratory action attempting to preempt [a party] from bringing a state law action." Wolverine Radio, 930 F.2d 1132, 1144-45. Further, the issues at the heart of the dispute did not involve the debtor, but third parties. In spite of the factors which tended toward the conclusion that the proceeding was non-core, the court found it to be core, concluding it "involve[d] issues which arose because of a bankruptcy proceeding–the dischargeability of debts and the confirmation of a plan–and because Wolverine assert[ed] a right based on bankruptcy law [under] 11 U.S.C. § 363(f)." Id. (citing Wood, 825 F.2d at 97). Under similar logic, the court reaches the same conclusion.

Here, the adversary proceeding by a secured creditor seeking to recover an asset, has the form of a matter arising in a bankruptcy case. The underlying complaint is clearly a matter affecting administration of the estate and the adjustment of the debtor-creditor relationship, two designated types of proceedings which enjoy "core" status under 28 U.S.C. § 157(b). To the extent any postpetition orders, including the cash collateral order and the sale order, govern the nature of Plaintiff's interests in the collateral, Plaintiff's position is dependent on this bankruptcy case and therefore "arises in" the main bankruptcy case. Plaintiff has to prove it is a secured party with an interest in Debtors' property to assert its state law claim. Further, Plaintiff alleged this adversary was a core proceeding and Trustee admitted the allegation. Although the counterclaims and cross-claims may not enjoy the same jurisdictional nexus, the counterclaims and crossclaims are ancillary to the underlying core complaint. For these reasons, the court finds the counts between Plaintiff and Defendant are core claims arising under title 11 and will therefore utilize § 1412 in reviewing the motion to transfer venue.

Movant, Plaintiff and Defendant all recognize that there is a presumption favoring venue in the district where the main case is filed. GEX Kentucky, Inc. v. Wolf Creek Collieries Co. (In re GEX Kentucky, Inc.), 85 B.R. 431, 435 (Bankr. N.D. Ohio 1987); Gulf

States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1390 (2d Cir. 1990). Since the Schwabs already bear the burden of persuasion for the transfer, they are required to overcome the presumption, which is not an insignificant hurdle. Northwest Airlines Corp v. Los Angeles (In re Northwest Airlines Corp.), 384 B.R. 51 (Bankr. S.D.N.Y. 2008) (citations omitted).

To succeed on their motion, the Schwabs must demonstrate that a transfer is warranted by either the interest of justice or for the convenience of the parties. Because the statute is phrased in the disjunctive, proof of only one is necessary. Shield v. Northfield Lab. Inc. (In re Northfield Lab. Inc.), 2010 WL 3417229 (Bankr. D. Del 2010) (reporter citation not available); Petersen v. Bauer (In re Bauer), 2010 WL 1905087 (Bankr. E.D. Tenn. 2010) (unpublished).

### B. *Interest of Justice*

No single set of factors can be fixed to encapsulate the interest of justice. However, both the Schwabs and Plaintiff refer to the factors outlined in Bavelis:

1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;

2) whether the interests of judicial economy would be served by the transfer;

3) whether the parties would be able to receive a fair trial in each of the possible venues;

4) whether either forum has an interest in having the controversy decided within its borders;

5) whether the enforceability of any judgment would be affected by the transfer; and

6) whether the plaintiff's original choice of forum should be disturbed.

Bavelis, 453 B.R. 832, (citing Enron Corp. v. Arora (In re Enron Corp.), 317 B.R. 629, 638-639 (Bankr. S.D.N.Y. 2004)).

A transfer would not promote efficiency. This court is presiding over the main bankruptcy case. All of debtor's assets are under the jurisdiction of this court. To date, all bankruptcy issues have been resolved by this court, including the sale of Debtor's assets and

6

the confirmation of the plan. This court is familiar with the facts, the relevant parties, the main bankruptcy case, and the underlying adversary proceeding. The proposed forum is not. Unquestionably, this is not an impediment to transfer, but it certainly does make it less efficient. A transfer would place this proceeding freshly on the case load of another court, resulting in an additional time delay, which does not promote efficiency. In all likelihood, some or all of the parties would be required to hire local counsel in Florida, thereby increasing the costs of litigation. Consequently, neither economy or efficiency champion transfer of this proceeding.

This forum was selected by the very persons who now seek transfer. The four directors who authorized the corporate bankruptcy filing in this court were Jerry Schwab, Donna Schwab, Mary Lynn Schwab, and David Schwab. (Corporate Resolution, doc. 2.) As outlined in several first day motions, "Debtor [Schwab Industries] is an Ohio corporation headquartered in Dover, Ohio which serves as the holding company of the other Debtors. As the parent organization, [Schwab Industries] owns, either directly or through another Debtor, all the equity interests of the other Debtors. [Schwab Industries] is owned entirely by four members of the Schwab family." (M. Jt. Admin., doc. 6, ¶ 9.) Even though some of the joint debtors were located elsewhere, including Florida, no one challenged the jurisdiction of this court when the bankruptcy was filed here. Nothing has changed since that filing to disturb this court's jurisdiction or the venue of the case. Additionally, both the Plaintiff and Defendant oppose transfer of this proceeding.

Although the Schwabs correctly point out that they are now involved in this proceeding in their individual capacities, the court finds this unpersuasive. Their direct actions brought all the other parties to this court's doorstep. Now that everyone is here, the Schwabs would rather be in Florida. Their request ignores this fact, as well as the fact that four other beneficiaries, including their own family members, are located in the Northern District of Ohio.

This court has a particular interest in resolving this controversy because it involves property of the bankruptcy estate and has the ability to impact the recovery of creditors of the estate. The main issue involves a question as to whether Plaintiff succeeded to Schwab Industries' collateral security interest in the policy premiums and therefore has the ability to enforce the split dollar agreement. This fundamental question does not involve issues of Florida law, but involves a provision of the Uniform Commercial Code adopted into the Ohio Revised Code. If Plaintiff fails to prove its interest, the cross-claims and counter-claims will be moot, thereby avoiding any review of Florida law. There is similarly no reason to believe that Florida law is impenetrable. Thus, the Schwabs' arguments touting the prominence of Florida law are unavailing.

These reasons, collectively, lead the court to conclude that the Schwabs have failed to carry their burden in proving a transfer is in interest of justice. The court must now determine whether the convenience of the parties warrants transfer.

7

### C. Convenience of Parties

The parties agree that five considerations are at the center of determining whether a transfer for the convenience of the parties is warranted. Those considerations were outlined as follows:

1) location of plaintiff and defendant,

2) ease of access to the necessary proof,

3) convenience of the witnesses and parties and their relative physical and financial condition,

4) availability of the subpoena power for unwilling witnesses, and

5) expenses of obtaining unwilling witnesses.

Bavelis, 453 B.R. 832, 874 (citing Enron Corp. v. Arora (In re Enron), 317 B.R. 629, 639 (Bankr. S.D.N.Y. 2004)).

The Plaintiff and Defendant are both national banking institutions with locations in both Ohio and Florida. Seven third-party defendants filed answers to Defendant's third-party complaint; four of the seven parties reside in Ohio. Thus, there are strong ties to this forum by the majority of the parties.

As Plaintiff points out, much of the necessary proof is already part of the record in this court. The Trust documents and the split dollar agreement have been provided to the court and it is unlikely much more would be necessary to decide the dispute between Plaintiff and Defendant. The availability of electronic transmission for documentary evidence also reduces some concern in this arena. The possibility of the need for other proof seems to arise more in the context of resolving the third-party complaint and cross-claims between the third-party defendants and Plaintiff. As stated above, it is not clear these issues will be ripe for decision. If Plaintiff is not successful, pursuit of these claims will be unnecessary.

Plaintiff has been intimately involved in the main bankruptcy case in Ohio and now requiring it to start to defend in a Florida forum would be inconvenient. The Schwabs claim inconvenience to them, mainly based on the ages of Jerry Schwab (84) and Donna Schwab (79) and Jerry Schwab's poor health. However, the Schwabs are the very people responsible for authorizing the bankruptcy case to be filed in this court, discussed above. Their business interests were centered in Dover, Ohio. It is disingenuous to argue that Ohio activity now represents an inconvenience to them. Their arguments also completely ignore their family

members and co-third-party defendants who are also involved in this litigation.

Along the same lines, the court is not persuaded that allowing the adversary to remain here represents a financial hardship. The Schwabs highlight the fees incurred by the Trust to date but there is no clear proof that those fees are specifically increased because of the location of the adversary proceeding. The same firm that represents Debtors represents the Schwabs in this adversary and the court finds it unlikely that the fees would decrease by moving the case to Florida and hiring local counsel in this matter, who would not have the degree of familiarity with all of the underlying facts and issues.

The final two considerations do not support transfer. Unwilling witnesses could be subjected to a subpoena. There has been no demonstration of a probability of increased expense because of unwilling witnesses. Consequently, the Schwabs have failed to overcome the presumption that a transfer of the adversary proceeding for the convenience of the parties is justified.

## II. Motion to Intervene

Creditor Trustee seeks to intervene in this proceeding by way of a motion filed on August 12, 2011, relying on Federal Rule of Bankruptcy Procedure 7024, which incorporates Federal Rule of Civil Procedure 24. He asserts a right to intervene as a matter of right and, alternatively, seeks permissive intervention. The motion is opposed by the Schwabs and Trustee.

### A. *Failure to attach a pleading*

As a preliminary matter, the Schwabs argue that the motion should be denied for its failure to attach a pleading pursuant to Rule 24(c). The Creditor Trustee argues that this is merely an exaltation of form over substance because all the parties are on notice of the Creditor Trustee's position. *See* Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309 (6th Cir. 2005). The court is not thoroughly convinced on this point. No one disputes that there is an alignment of interests between Plaintiff and the Creditor Trust. A pleading would have focused the Creditor Trust's position on its claims and/or defenses, thereby providing a greater erudition for other parties. Regardless, the court finds no prejudice to the other parties to permit decision on the merits of the intervention motion rather than a technicality.

### B. *Intervention of Right*

Intervention as a matter of right is governed by Rule 24(a). Creditor Trustee relies on Rule 24(a)(2), which requires a court to grant intervention when the requesting party:

> (2) claims an interest relating to the property or

> transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). To succeed in intervening in this action as a matter of right, Creditor Trustee must demonstrate that

> 1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest.

Blount-Hill v. Zelman, 636 F.3d 278 (6th Cir. 2011) (citing Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999)).

The Schwabs strenuously object to Creditor Trustee's claim that his motion is timely. Five factors direct a determination whether a motion to intervene is timely:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

Blount-Hill, 636 F.3d 278, 284 (citing Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990) (other citation omitted)).

One particular factor strikes the court as paramount, specifically the length of time that passed between Creditor Trustee's knowledge of his interest in this adversary and the filing of the motion to intervene. The confirmation order approving Debtors' liquidation plan was entered on December 8, 2010, formalizing the Creditor Trust. This order established the baseline for the Creditor Trustee's knowledge of his interest in this proceeding, but his motion was not filed for another eight months. The Creditor Trustee

10

affirms that "all parties have had knowledge of the Creditor Trust's interest in the outcome of the Adversary Proceeding since its inception." (M. Intervene, ¶ 33) Conversely, he also knew of his interest, yet offers no explanation for his undue delay. This dilatory action is a significant obstacle in establishing timeliness.

According to Trustee, his motion is timely because the adversary is still in its infancy. As support for his position, he references the fact that discovery has not concluded and no trial has been set. This ignores the progress of the case. The complaint was filed on October 13, 2010, nine months before the motion to intervene was filed. Although Creditor Trustee is correct that answers were filed as late as July 2011, approximately one month before the motion to intervene was filed, those pleadings were amendments authorized by the court during a June 2011 pretrial. It was the final volley in months of initial pleadings, including cross-claims, counterclaims and a third party complaint, which allowed the court to move the adversary from the initial pleading stage to the next stage, discovery, which commenced in June 2011. Since discovery is scheduled to conclude at the end of December, intervention would require extension of the discovery and dispositive motion deadlines, thereby delaying progress of the case. Two factors now strongly disfavor finding that the motion to intervene was timely filed.

The court also questions the purpose of Creditor Trustee's intervention. On these facts, a review of the purpose substantially overlaps the remaining factors that drive the ultimate determination of a party's right to intervene.

No one disputes that the Creditor Trust is entitled to share in any proceeds which may be recovered by Plaintiff. However, the Creditor Trust's entitlement to proceeds is entirely dependent on the recovery by Plaintiff. The Creditor Trust cannot assert a direct interest in the policy premiums, nor claim secured party status under O.R.C. § 1309.607. It does not have a direct legal interest in the proceeds. It is entitled to fifteen percent of the proceeds only if Plaintiff establishes its entitlement to a recovery. The Plaintiff is the life source for the Creditor Trust. This dependency on Plaintiff's recovery also means that the Creditor Trust's interest is adequately represented by the Plaintiff. Plaintiff has an incentive to recover what it can to reduce its $15,000,000 deficiency claim. Any amount it recovers automatically results in funds flowing to the Creditor Trust.

The court agrees with the Schwabs and concludes that permitting intervention would merely result in duplicative and unnecessary litigation. The Creditor Trust has referenced no independent claims or defenses to advance. Consequently, the court finds a questionable legal purpose in Creditor Trustee's motion. Coupled with the concerns about the delay in filing the motion and the delay that would result from allowing intervention, the court finds that the motion to intervene was untimely. The court will not grant intervention as of right.

C.  *Permissive Intervention*

Creditor Trustee also seeks permissive intervention under Rule 24(b). Timeliness is a predicate of relief: "[o]n timely motion, the court may permit anyone to intervene who . . . [either has a conditional intervention right under federal statute or who has] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)1). For the reasons outlined above, the court finds that the motion is untimely. Consequently, permissive intervention will also be denied.

## CONCLUSION

A presumption exists that the home court is the proper venue for an adversary action. The Schwabs failed to rebut this presumption, proving neither the interest of justice nor the convenience of the parties warranted transfer to the United States District Court for the Middle District of Florida. The motion to transfer is denied.

The Creditor Trustee's motion to intervene is also denied. The motion was not timely filed, barring both intervention as a matter of right and permissive intervention.

An order will be issued immediately.

#   #   #

**Service List:**

Marc Merklin
Patricia Screen
Brouse McDowell, LPA
388 S. Main Street, Suite 500
Akron, OH 44311

Alan R Lepene
Andrew L. Turscak, Jr.
Curtis L. Tuggle
Thompson Hine LLP
3900 Key Tower
127 Public Square
Cleveland, OH 44114-1216

12

Marcel C Duhamel
Drew T. Parobek
Kevin T. Duffy
Vorys, Sater, Seymour and Pease LLP
1375 E 9th St
One Cleveland Center
#2100
Cleveland, OH 44114-1724

Aaron L. Hammer
Thomas R. Fawkes
Freeborn & Peters LLP
311 S. Wacker Drive
Suite 3000
Chicago, IL 60606